No. 79,237

In the Matter of JAMES L. FARMER, *Respondent.*

(950 P.2d 713)

Opinion filed December 12, 1997.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Clifford A. Cohen,* of Buck, Bohm & Stein, P.C., of Leawood, argued the cause for respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Respondent James L. Farmer, an attorney admitted to the practice of law in the state of Kansas, whose business address is in Kansas City, Kansas.

The facts are not disputed. Respondent did not file exceptions to the hearing panel's report. Under Rule 212(c) and (d) (1997 Kan. Ct. R. Annot. 226), the report is deemed admitted.

Respondent has admitted violations of the Model Rules of Professional Conduct (MRPC) 1.1 (1997 Kan. Ct. R. Annot. 268) (a lawyer shall provide competent representation to a client), 1.3 (1997 Kan. Ct. R. Annot. 276) (a lawyer shall act with reasonable diligence and promptness in representing a client), 1.4(a) (1997 Kan. Ct. R. Annot. 282) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information), 1.8(e) (1997 Kan. Ct. R. Annot. 301) (providing financial assistance to a client, *i.e.,* loaning money from his trust account to clients who did not have money in the account), 1.15 (1997 Kan. Ct. R. Annot. 316 ) (safekeeping of clients' property), 3.2 (1997 Kan. Ct. R. Annot. 333) (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client), 5.1 (1997 Kan Ct. R. Annot. 351) (failing to properly carry out his responsibilities as a supervising lawyer), 5.3 (a) and (b) (1997 Kan. Ct. R. Annot. 353) (responsibility for the conduct of nonlawyer assistants), and 8.4(d) (1997 Kan. Ct. R.

Annot. 366) (engaging in conduct prejudicial to the administration of justice). We note that the panel found a violation of MRPC 3.1 (1997 Kan. Ct. R. Annot. 332) (meritorious claims and contentions) in its conclusions of law introductory paragraph but negated the 3.1 violation in the body of its conclusions.

The panel unanimously found by clear and convincing evidence:

"2. Count II arose because three of Respondent's former employees complained to the Disciplinary Administrator that Respondent provided little or no training, supervision or guidance for his lawyer and non-lawyer employees, that he allowed non-attorneys to give legal advice, and that he would not return phone calls. Investigator Karen Shelor conducted interviews with the complainants and then interviewed the following Federal Bankruptcy Court Judges and Trustees: Frank Koger, Arthur B. Federman, Karen See, John T. Flannagan, William H. Griffin, Timothy Sear, Carl Clark, Eric Rajala.

"3. The testimony of the judges and trustees is full of specific references to cases in which Mr. Farmer represented the debtor and incorrectly conducted his practice in court: failed to appear, delayed proceedings because of his mistakes, did not take responsibility for errors.

a. Judge Koger testified that he saw Respondent 'butcher' a lot of causes of action. Judge Koger stated he took Respondent aside and pointedly discussed the problems Respondent was causing; however, the judge answered on cross-examination that he did not report Respondent to the Kansas or Missouri Disciplinary Administrator, nor did the judge use the contempt rule to fine or bar Respondent from his court or otherwise sanction Respondent—nor any other attorney for that matter.

b. Judge Federman also cited specific problems with Respondent's cases: failure to appear at court hearings; did not have a list of exemptions under state law; and failure to provide information requested by the court. Some of these problems resulted in harm to the client by a loss of equity. Judge Federman did sanction Respondent in one case.

c. Judge See related that Respondent often failed to file required pleadings. She wrote to Respondent and detailed the problems she saw and presented an outline of suggestions intended to help him organize his bankruptcy practice to avoid repeated mistakes. She received no response from Mr. Farmer. She noted that the Amanda Rae Saylor Chapter 7 case was wrongly filed in Kansas, rather than Missouri.

d. Judge Flannagan described many of the same problems with Respondent's bankruptcy practice: (1) failure to follow procedures and court rules; (2) failure to notice up motions; and (3) mistakes in schedules. In the Terry case, the judge became particularly angry and frustrated with Respondent's 'sloppy' practice. Twice Judge Flannagan counseled Respondent to correct his ways, but Respondent did not change.

"All the judges testified that Respondent would blame his employees for the errors and problems pointed out to him.

"4. a. Bankruptcy Trustee Griffin testified that he was contacted by Investigator Shelor and thereafter prepared a review of the cases Mr. Farmer had before him. That review became Exhibit 2 consisting of a spiral bound book of six parts describing Mr. Farmer's practice. The following is a summary of the cases included in Mr. Griffin's exhibit. The Terry case involved Respondent's failure to send out notice of hearing on a motion filed on behalf of debtor. The Burnams' Chapter 13 petition included a car payment on a car that had allegedly already been repossessed and resold. The Wills bankruptcy omitted pleadings that would have allowed the debtor to make necessary roof repairs. In the Massey case, Respondent failed to file a reply to the mortgage company's motion stating it hadn't been paid. In the Vasquez bankruptcy, the witness wrote Mr. Farmer detailing his concerns about the feasibility of the plan because Respondent omitted the plan particulars. The Anderson bankruptcy was another example of Respondent's failure to notice up motions he filed. In the Vance case, Mr. Farmer filed in the wrong state. In the Taylor case Respondent failed to disclose income from property listed on Schedule A. Mr. Griffin stated his belief that a lot of the confusion in Mr. Farmer's cases was attributable to Mr. Farmer's lack of knowledge of bankruptcy practice.

"Mr. Griffin also sponsored Exhibit 9 which details 187 cases in his court where Respondent had either erred in noticing up a motion, or failed to amend plans once mistakes were discovered. Although the debtors usually obtained the discharge of their debts through the petitions filed by Respondent's office, the trustee pointed out that it was not without great burden on the trustee's office and great frustration to clients who called the trustee's office for information when they could not reach Respondent.

b. Trustees Timothy Sear and Carl Clark made many of the same observations as Mr. Griffin. These observations included: the failure of his clients to show for the first meetings of creditors; Respondent's lack of knowledge about clients or the clients' financial affairs; and Respondent's incomplete filings and failure to respond to the trustee's repeated requests for information. This behavior resulted in many calls from his clients to the trustees and more work for the bankruptcy system.

c. Trustee Eric Rajala found similar deficiencies with Respondent's bankruptcy practice. There were repeated inquiries of Respondent that went unanswered; amended schedules were common in Respondent's cases; and failure of Mr. Farmer and his clients to appear at scheduled hearings also occurred frequently.

"5. Witness Carol Horvatic Bolton, as the Deputy U.S. Bankruptcy Court Clerk in charge of the Kansas City Bankruptcy Court Clerk's Office, was familiar with Respondent's bankruptcy practice and characterized it as full of incomplete pleadings, noncompliance with the bankruptcy rules and regulations, lacking in diligence, missed deadlines, and clients who called her office because they could not reach Respondent. All of this greatly increased the workload of her office. She

testified on cross-examination that she had not received any calls from Mr. Farmer's clients in 1996 and to date in 1997.

"6. Karen Shelor was the investigator for the Disciplinary Administrator's office. Ms. Shelor interviewed the three former employees of Mr. Farmer who made the complaint and then followed up with interviews of the bankruptcy judges, trustees and clerk. When she interviewed Respondent he explained the problems to her as resulting from rapid expansion of his bankruptcy practice. Ms. Shelor testified that Respondent had planned to specialize in high volume, low cost bankruptcy cases, and that Respondent had hired 6 attorneys and 14-15 legal assistants in a short time span. Respondent was ·critical of all of his staff members to Ms. Shelor even though he hired and trained them. Ms. Shelor reported that Respondent also found fault with the bankruptcy trustees, describing them as acting like his boss and making unreasonable demands and that he believed other attorneys who criticized him were jealous of him.

"7. Complainants Graham, Hartley and Delaney all gave similar testimony. They testified that they were concerned about the manner in which Respondent ran his offices and trained his employees.

a. Ms. Graham was a legal secretary in the Leavenworth office. She said the other secretaries in the office trained her to interview clients, prepare bankruptcy petitions, enter them in the computer, and answer phone calls. She said Respondent was frequently out of the office and rarely returned phone calls in a timely manner. She testified that on several occasions Respondent divided 30 days' worth of phone message slips among the secretaries and told them to check with the caller to see if there was still a question or a problem. She claimed on several occasions that Respondent asked employees to be dishonest about the status of a filing. She stated she filed the complaint with the Disciplinary Administrator because of Respondent's poor treatment of his employees and his sloppy work. Yet, she admitted that Respondent handled both her divorce and bankruptcy. She admitted that Respondent had been critical of her work as being sloppy. The testimony is inconclusive whether Respondent actively allowed, or simply failed to prevent, the practice of law by his nonattorney employees.

b. Susan Delaney worked as a secretary in Respondent's Johnson County, Kansas office and later in his Kansas City, Kansas office. She claimed she prepared and filed bankruptcy petitions frequently without attorney supervision or review. She also stated that she would describe the appearance of clients so that when Mr. Farmer met them at a hearing for the first time, he might recognize them. She also stated that she answered client questions about legal matters and lied about court dates and filing dates.

c. Aliesha Hartley was a secretary in the Lenexa, Kansas office, and later in the Wyandotte County, Kansas office. She testified that she also answered client questions about bankruptcy, that nonattorneys decided whether to file a Chapter 7 or a Chapter 13 petition, that Respondent did not meet with clients before their hearings, and that she misrepresented filing dates. She quit working for Mr. Farmer the day he sent her to the bankruptcy court where she felt she was humiliated

because the judge refused to deal with the cases until Mr. Farmer appeared before him.

d. Cynthia Combites was a secretary at first in Respondent's Leavenworth, Kansas office and later in his Kansas City, Kansas office. Her testimony, taken by deposition on December 3, 1996, was similar to that of Respondent's other employees. She testified that she was trained by another secretary, that Mr. Farmer was rarely available to answer questions or talk to clients, that she interviewed clients and filled out the bankruptcy forms.

"8. Defense witnesses included: Respondent himself; Dr. Esther Megerman, a PhD psychologist; Robert L. Kennedy, a Kansas City, Kansas attorney who has agreed to supervise Respondent; Respondent's clients Mr. Williams, and Jesse Romero; and Wyandotte County District Court Judges Klapper, Mikesic and Duncan.

"9. All three judges spoke favorably about Respondent's practice before them. The state court judges did not have first hand knowledge of Respondent's bankruptcy practice.

"10. Mr. Farmer's two clients expressed satisfaction with his handling of their cases—a bankruptcy filing and a personal injury matter.

"11. Mr. Kennedy plans to retire and has agreed with Respondent's counsel, Mr. Cohen, to take on the task of supervising Respondent if the Supreme Court so directs. Mr. Kennedy has approximately 20 years of experience as a practicing attorney and he is adept at client relations and office administration.

"12. Dr. Megerman began treating Respondent following a referral from Mr. Cohen. She diagnosed Respondent as suffering from major depressive disorder, acute distress disorder and panic disorder with agoraphobia and grief. Through antidepressant and anti-anxiety medications, as well as counseling sessions, Respondent has taken responsibility for the behavior leading to the disciplinary proceedings. Respondent told Dr. Megerman that he plans on discontinuing his bankruptcy practice. He agreed to continue medication, and she believes this will enable him to suffer less from fatigue and be able to make changes in life style without suffering from paralyzing panic that characterizes his anxiety disorder. The medication enables him to concentrate, focus, have energy and not panic.

"13. Respondent testified about how he entered the legal profession, and about the impact of his expanding practice on his personal life, and his income. He said Dr. Megerman gave him a view of how others see him, Respondent realizes he is very unhappy with the stressful practice he created. Respondent does not want to surrender his license because he wants to support his family and continue his practice outside the area of bankruptcy. He vehemently denied directing or allowing his secretarial staff to give legal advice, and he stated he always reviewed petitions before filing. He admitted his mistakes in training his employees, in his bankruptcy practice, and poor client contact. He believes complainants were motivated to contact the Disciplinary Administrator because he laid them off work or fired them for poor performance."

Based on the findings of fact, the panel reached the following conclusions of law:

"14. Respondent's conduct (with regard to Counts II and V) violates the [Model] Rules of Professional Conduct (MRPC) Sections 1.1, 1.3, 1.4, 3.1, 3.2, 5.1, 5.3, 8.4, 1.15 and 1.8(e).

"15. The Panel finds by clear and convincing evidence that Respondent violated MRPC 1.1 regarding his competence to practice before the Bankruptcy Court. As four federal bankruptcy court judges and four trustees in bankruptcy testified, Respondent repeatedly failed to follow the bankruptcy court rules and local rules concerning noticing of motions. Their testimony also indicates that Respondent does not understand or apply the essentials of bankruptcy law. It was shown by clear and convincing evidence that Respondent did not understand the difference between secured and unsecured creditors, the fact that unsecured debts are discharged in a Chapter 7 bankruptcy, the fact that Chapter 13 plans cannot be filed with payments that extend beyond 60 months (the jurisdictional limit of the Bankruptcy Code), and the difference between motion practice and adversary practice in the bankruptcy courts. Over a period of several years, Respondent delayed filing of Chapter 13 plans on behalf of his clients, filed incomplete pleadings or pleadings that lacked the required client signature, appeared at Chapter 7 creditors meetings unprepared to represent his clients, and repeatedly failed to protect his clients tax refunds by means of the necessary pre-petition actions.

"While Respondent professed to be knowledgeable in bankruptcy law he made statements that showed the contrary. Respondent advised the Panel that by law, charges on a debtor's credit card made within 90 days of filing for bankruptcy, are presumed fraudulent. In fact, the period is 60 days, not 90 days. Respondent approved of and used in his office a document entitled 'Bankruptcy in a Nutshell' which is replete with errors. Furthermore, Respondent incorrectly stated that a Texas judgment would give a creditor a lien on Kansas real estate. Also, Respondent filed Kansas cases in Missouri courts and, in at least one instance, vice versa. Finally, Respondent improperly classified child support in a Chapter 13 case.

"The foregoing actions on the part of Respondent have, in some cases, harmed clients. For example, Judge Flannagan testified that he dismissed a bankruptcy petition for one of Respondent's clients simply because Respondent's errors were too numerous and too grave. Judge Koger testified that in the Billie Lee case, Respondent failed to obtain release of a garnishment. (This is an example of Respondent's failure to file complete pleadings along with the requisite orders and envelopes.) Trustee Griffin testified that in the Terry bankruptcy case, Terry's employer continued to withhold Chapter 13 plan payments from Terry's paycheck because Respondent failed to notice up a motion to abate the plan payments.

"16. The Panel finds by clear and convincing evidence that Respondent violated MRPC 1.3 regarding diligence in his bankruptcy practice. The trustees and clerks employed in the bankruptcy court system testified of numerous examples where Respondent failed to appear at Chapter 7 creditors meetings, as well as court

hearings. His lack of diligence in this practice burdened the court system with the unnecessary rescheduling of hearings.

"17. The Panel finds by clear and convincing evidence that Respondent violated MRPC 1.4 by failing to communicate with his clients. He either communicated poorly with those clients about the procedure for filing bankruptcy, or he simply did not communicate at all with the client before the pleadings were filed. Trustee Griffin testified that Respondent's clients frequently called his office asking for legal advice stating that they called Respondent and he did not return their calls. In the Ransom case, Mr. Griffin received a letter wherein the client stated she was having trouble reaching Mr. Farmer. In the Hanson case, Mr. Griffin learned from the debtor that Mr. Farmer had not informed him of an existing stay order.

"Deputy Clerk Carol Horvatic, Kansas City, Kansas cited many instances of Mr. Farmer's clients calling her office to get information about their cases. Invariably, the clients stated that the clients could not reach Mr. Farmer. Trustee Tim Sear's office also received calls from Mr. Farmer's clients who said that Mr. Farmer would not return their calls. The three former employees of Mr. Farmer who were the complainants testified, and Mr. Farmer confirmed, that Mr. Farmer would periodically come to his nonattorney staff with a handful of phone message slips, divide the slips among the employees and tell them to return the call, and 'handle it.' Mr. Farmer did deny that he instructed his secretaries to give legal advice.

"18. The Panel does not find clear and convincing evidence of a violation of MRPC 3.1 which relates to the duty to file meritorious claims.

"19. The Panel finds clear and convincing evidence that Respondent's continuous failure to properly file appropriate pleadings and failure to appear at meetings of creditors violated MRPC 3.2.

"20. By clear and convincing evidence, this Panel finds that Mr. Farmer violated MRPC 5.1 by failing to properly carry out his responsibilities as a supervising lawyer or partner. Respondent testified that he hired inexperienced lawyers to provide bankruptcy services in his auxiliary offices and that sometimes these inexperienced lawyers caused problems for Farmer Law Offices. The Panel believes that the responsibility for supervising, training, educating, reviewing and otherwise mentoring inexperienced attorneys rested with Respondent. Respondent did not use reasonable efforts to adequately assure that they complied with MRPC and were knowledgeable about the court rules.

"21. The Panel also finds that Respondent violated MRPC 5.3(a) and (b) regarding his responsibility for the conduct of non-lawyer assistants. Regardless of whether Respondent explicitly instructed his employees to render legal advice or to lie to clients, the evidence is clear and convincing to the Panel that Respondent did not take the necessary and reasonable steps to supervise his employees. He needed to be pro-active to insure that they were not giving legal advice to clients and other callers.

"22. The Panel finds, based on several occasions described by Mr. Hazlett, that Respondent used his firm's trust account in violation of MRPC 1.8(e). Specifically,

Respondent loaned money from the account to clients who did not have money in the account. He also used the funds in the account for personal expenses.

"23. The Panel finds and Mr. Farmer admits that he violated MRPC 1.15 regarding safekeeping of property.

"24. Clear and convincing evidence supports the Panel's finding that Respondent violated MRPC 8.4. Mr. Farmer's conduct, as he described it, and as his former employees and the bankruptcy judges and trustees testified, was prejudicial to the administration of justice. His bankruptcy practice drew criticism from four bankruptcy judges. They called him aside and in private conferences confronted him with the problems his actions were causing for his clients, himself and the courts. Similar criticism and conferences were initiated by the trustees who testified Despite these confrontations, Mr. Farmer made no changes in his practice. He continued to miss hearings, and make mistakes in sending notices, filing pleadings and analyzing the law. These actions created more work and frustration for the courts, thereby prejudicing the administration of justice in the bankruptcy courts. The Panel wants it noted, however, that the bankruptcy court system and members of the legal profession did not come forward to report Respondent's misconduct, some of which dates back to 1991. This failure to report could in and of itself be a violation of MRPC and certainly did add to the hardship imposed on the courts by allowing the conduct to continue for approximately four (4) years."

## After reviewing all these factors, the panel recommended:

"The Disciplinary Administrator has requested the Panel recommend to the Supreme Court that Respondent be disciplined pursuant to Rule 211(f).

"In making its recommendations for discipline, the Panel has reviewed the ABA Standards for Imposing Lawyer Sanctions. The factors to be considered include the following: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors.

"In his bankruptcy court practice, Mr. Farmer knowingly violated duties he had to his clients, to the bankruptcy court system, the legal profession and harmed all three emotionally, intellectually, and monetarily.

"We must then turn to the ABA Standards on Aggravation and Mitigation to determine whether any factors present either increase or reduce the nature and extent of discipline to be imposed."

## In considering aggravating factors, the Panel found the following [The panel's recitation of factors that did not apply have been omitted]:

"c. Pattern of misconduct and

"d. Multiple offenses. Respondent's bankruptcy practice shows a pattern of failing to return calls, to communicate with clients, associates and staff, to appear at scheduled hearings, to properly file pleadings, to notice up motions, to inform clients, to supervise employees—this pattern of conduct resulted in multiple offenses.

. . . .

"h. Vulnerability of the victim. The Panel believes that Respondent's clients were vulnerable in the sense that they trusted their attorney to competently guide them through the bankruptcy process and in some cases were harmed by his failure to do so.

"i. Substantial experience in the practice of law. Respondent is a 1984 graduate and admitted to practice and has sufficient experience to have been attentive to the duties he is found to have violated."

## In considering matter of mitigation, the panel found:

"a. Absence of a prior disciplinary record. Respondent does not have a disciplinary record.

. . . .

"c. Personal or emotional problems if such misfortunes have contributed to violation of the code of professional responsibility. Respondent's psychologist testified about her diagnosis of Respondent's emotional problems and her treatment of them and their contribution to his practice management problems, but the Panel finds that Respondent's emotional problems did not contribute significantly to Respondent's violations of the rules of ethics.

. . . .

"g. Previous good character and reputation. Three judges testified in support of Respondent's practice and character.

. . . .

"i. Mental disability or chemical dependency including alcoholism or drug abuse when (1) there is medical evidence that the Respondent is affected by a chemical dependency or mental disability; (2) the chemical dependence or mental disability caused the misconduct; (3) the Respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. There is medical evidence that Respondent had a mental condition which, according to his treating psychologist, 'paralyzed' him from taking action.

. . . .

"After reviewing all of these factors, the Panel recommends that Respondent be suspended from the practice of law for two (2) years, with such suspension to be suspended so long as Respondent complies with the following conditions of probation:

"(1) Probation shall last for two (2) years.

"(2) Respondent shall continue to attend counseling sessions with his psychologist for so long as the psychologist deems counseling necessary for Respondent.

"(3) For two (2) years Respondent shall accept the supervision of Robert Kennedy and adopt all recommendations and the management of Respondent's law practice. Mr. Kennedy outlined in his testimony the conditions of his supervision and the Panel recommends that Respondent be required to follow Mr. Kennedy's conditions.

"(4) Respondent shall file a motion to withdraw with proper notice of hearing in all Chapter 13 cases in which he or his firm is attorney of record, within ten (10) days after the receipt of the Supreme Court's order, and shall assist his clients in obtaining competent bankruptcy counsel. Further Respondent shall not represent any client in any bankruptcy matter during the two (2) year suspension or the two (2) year probation period.

"(5) Respondent shall complete fourteen (14) hours of continuing legal education specifically dealing with the practice of bankruptcy law and shall submit evidence of the completion of that legal education to the Disciplinary Administrator's Office before reentering the practice of bankruptcy law.

"In the event Respondent violates any of the foregoing conditions, the Panel recommends Respondent be suspended from the practice of law for two (2) years.

"The Panel recommends probation because a suspension will not remove Mr. Farmer from practicing in the federal bankruptcy court—a court in which he is not competent to practice. However, at the hearing, Mr. Farmer voluntarily agreed to give up his bankruptcy practice if he is allowed to continue to practice in other areas, and there was no evidence submitted to the Panel to show that he is incompetent to practice in other areas of the law.

"Costs should be assessed against Respondent in an amount to be certified by the Disciplinary Administrator."

We have reviewed the record and conclude the findings of fact and conclusions of law contained in the hearing panel report are supported by clear and convincing evidence. However, we do not agree with the panel's recommendation of a 2-year suspension and probation.

The Disciplinary Administrator recommended indefinite suspension as a sanction to the panel and renewed that recommendation during oral argument before this court.

We turn now to our standard of review:

"It is well established that the panel's findings and recommendations are advisory only and are not binding on the court. *State v. Phelps,* 226 Kan. 371, 378-79, 598 P.2d 180 (1979); [Citation omitted.] It is the responsibility of this court to examine the evidence and determine for itself the discipline to be imposed. [Citation omitted.] " *In re Smith,* 249 Kan. 227, 229, 814 P.2d 445 (1991).

We may impose sanctions lesser or greater than those recommended. *In re Veith,* 252 Kan. 266, 272, 843 P.2d 729 (1992) (citing Supreme Court Rule 212(f) [1997 Kan. Ct. R. Annot. 226]).

Respondent's misconduct here does not involve an isolated incident or an inadvertent error. The panel was concerned with repeated evidence of incompetence set forth in the record. We voice similar concerns. Respondent has admitted incompetence to practice his specialty, bankruptcy.

Respondent filed bankruptcy matters in 1997 after the date he admitted he was incompetent to practice in bankruptcy court. Respondent's counsel candidly confirmed this fact during oral argument. Respondent repeatedly failed to follow through on his responsibilities as a lawyer. He either was unable or refused "to accept and perform the obligations of the legal profession." *State v. Dixon,* 233 Kan. 465, 472, 664 P.2d 286 (1983). Despite the hearing panel's recommendation of suspension from the practice of law for 2 years and probation, we are of the opinion that Respondent should be indefinitely suspended.

IT IS THEREFORE ORDERED that Respondent James L. Farmer be suspended from the practice of law indefinitely in accordance with Supreme Court Rule 203(a)(2) (1997 Kan. Ct. R. Annot. 201) for his violations herein.

IT IS FURTHER ORDERED that Respondent shall comply with Supreme Court Rule 218 (1997 Kan. Ct. R. Annot. 218).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to Respondent.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.