No. 81,383

In the Matter of BRYAN A. RICKMAN, *Respondent.*

(972 P.2d 759)

Opinion filed January 22, 1999.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint and on the brief for petitioner.

*Stephen B. Angermayer,* of Fern & Angermayer, L.L.C., of Pittsburg, argued the cause and was on the brief for respondent, and *Bryan A. Rickman,* respondent, appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Bryan A. Rickman, of Girard, an attorney admitted to the practice of law in Kansas.

Three counts were called for hearing on March 26, 1998. Count I was dismissed for failure of the complainant therein to appear. Count II concerned respondent's representation of a defendant in a driving under the influence case. Although directed to do so, respondent failed to respond to the Disciplinary Administrator's July 19, 1996, letter relative to said complaint. As a result thereof, respondent was charged with a violation of Supreme Court Rule 207 (1998 Kan. Ct. R. Annot. 222) (failure to cooperate in investigation). In his answer, respondent admitted the allegation contained in Count II.

### FACTS

In Count III, the panel concluded that respondent violated MRPC 8.4(c), (d), and (g) (1998 Kan. Ct. R. Annot. 386) (misconduct). Count III involves a complicated factual situation which, although substantially admitted in respondent's answer and testimony, needs to be set forth herein in some detail. On September 7, 1990, pleadings were filed commencing the probate of the estate of Phebe Carothers. The executor was Charles Wilson and the attorney for the estate was Charles Menghini. On March 23, 1993, the executor was removed for failure to file an inventory and other

pleadings. Shortly thereafter, two significant events occurred: respondent was appointed administrator c.t.a., and Menghini became ill. Unfortunately, the change in fiduciary did not speed up the administration of the estate. The inventory was not filed until January 25, 1994, after a notice of intent to dismiss was filed. In July 1994, real property belonging to the estate was sold for $18,500 by respondent pursuant to an order for sale.

In August 1996, the court sent a notice of intent to dismiss to the Menghini law firm. C. A. Menghini, son of the listed attorney for the estate, requested a 30-day continuance to investigate the matter. (All further references in this opinion to attorney Menghini are to the son.)

The panel made the following findings as to what transpired thereafter as follows:

"7. On September 24, 1996, the court entered an order directing Respondent to appear on October 8, 1996 to respond to requests for information. Respondent failed to appear on that date. On October 24, 1996, at the request of Chuck Menghini, the court issued an order directing the Respondent [to] surrender his entire estate file on or before December 2, 1996. On December 12, 1996, at the request of Mr. Menghini, the court issued a citation to show cause directing the Respondent to appear before the court on December 20, 1996, and show cause why he should not be held in contempt for failure to comply with the court's order. On December 20, 1996, Respondent met with Mr. Menghini. On January 29, 1997, Mr. Menghini filed a motion to remove the Respondent as administrator c.t.a. and alleged that Respondent had withdrawn $8,436.54 from the estate's bank account without authorization from the court. Respondent appeared on February 10, 1997, to respond to the motion, admitted he had taken funds from the estate without authorization, stipulated to his removal as administrator, waived compensation for services and reimbursement of expenses, and agreed to repay the estate $8,286.54.

"8. Respondent testified as to the circumstances of his use of estate money. He used the $900 withdrawn on August 22, 1994 to help a friend [who later became his wife] who had written insufficient funds checks. The [$1400] withdrawn on October 18, 1994 was not used for 'attorneys fees' per his memo to the estate account checkbook, but rather to purchase an engagement ring for his fiance. The $673.29 withdrawn on November 16, 1994, was used for personal expenses. Respondent testified he specifically used an uneven number so it would not look suspicious. The $2,500 withdrawn on May 14, 1995 was used to finance his wedding and his purchase of the law library from his former colleague. Respondent testified that he used the withdrawals on February 26, 1996 ($250), on May 24, 1996 ($250), July 25, 1996 ($200) and September 16, 1996 ($900) for personal

expenses, although he doesn't recall what exactly he bought. Respondent repaid the estate by money order dated March 7, 1997 in the amount of $8,286.5[4], many months after discovery of the misappropriation.

"9. Respondent repeatedly ignored the court's orders to produce the estate file. . . . Respondent testified he lost his file when he moved his law office in 1995 from Pittsburg to Girard, Kansas. . . . He later discovered the file in the trunk of his Riviera, which he seldom drove. He did not explain these circumstances to the court.

"10. Respondent placed in evidence a psychological evaluation performed March 12, 1998 by Charles R. Mote, MS LMLP . . . . This evaluation concludes that Respondent experienced long term, mild chronic depression combined with feelings of professional inadequacy and reluctance to access advice or assistance. Continuation of medication was recommended and an offer was made to assist Respondent and his wife with their joint and individual stresses. Respondent also introduced, as Exhibit 6, a letter from Sara Beezley, Girard attorney, agreeing to supervise Respondent under a plan of probation. Exhibits 2, and 4 through 19 include letters from private individuals and members of the Crawford County Bar supporting Respondent personally and professionally. The telephone testimony of Attorney Cerne also supported Respondent's legal abilities and good character."

## CONCLUSIONS OF LAW

From its findings of fact, the panel concluded the following, in pertinent part:

"COUNT II: CASE NO. A6887. Respondent admits that he knew of his duty to respond to the Disciplinary Administrator about the Smilie complaint and that he neglected to do so. His draft letter to the Disciplinary [Administrator] does not mitigate this situation because it was never delivered to the Office of the Disciplinary Administrator. We find that Respondent has violated [Supreme Court Rule] 207 by his inaction. The panel is particularly disturbed by Respondent's failure to respond because it occurred at the same time he was being investigated and admonished for similar complaints against him . . . , including the complaint which gave rise to Count I in this proceeding.

"COUNT III: CASE NO. A6933. The panel finds that Respondent violated MRPC 8.4(c), (d) and (g). Respondent violated MRPC 8.4(c) when he stole the estate money for personal use. He acted knowingly and calculatedly as shown by his misrepresentations in the checkbook memoranda. His stealing continued for 25 months, with 10 different checks totalling more than $8,000. He admitted inventing one uneven amount to put on a check to discourage suspicion.

"In addition, the panel finds that Respondent violated MRPC 8.4(d) and (g). Respondent failed to appear as ordered by the Crawford County District Court. Respondent was not diligent in locating the missing file and did not notify the court of its absence or work to reconstruct it. Respondent stole the estate funds. Respondent had a duty to follow the rules of professional ethics while executing

his duties as administrator. The comment to rule 8.4 specifies that the lawyers acting as administrators, and in other positions of public office, assume legal responsibilities going beyond those of other citizens. In addition, the comment states that a lawyer's abuse of public office and private trust can suggest an inability to fulfill the professional role of attorney. Respondent was aware of his duty to follow the rules of professional conduct when acting as administrator."

## RECOMMENDED DISCIPLINE

Having found that respondent has violated the rules of professional ethics, the panel next considered the measure of discipline to recommend. The panel reasoned as follows:

### "FACTORS IN AGGRAVATION

"Factor (a) [prior disciplinary offenses]: Respondent has a prior disciplinary offense; he was informally admonished May 9, 1996 in Case No. A6314.

"Factor (b) [dishonest or selfish motive]: Respondent exhibited dishonest and selfish motives in stealing money from the Carothers estate.

"Factor (c) [pattern of misconduct]: Respondent exhibited a pattern of misconduct as to his violations of [Supreme Court Rule] 207 and MRPC 8.4.

"Factor (h) [vulnerability of victim]: Respondent took advantage of the vulnerability of decedent's grandchildren by not having a guardian ad [litem] appointed to safeguard their interests and by stealing money from the estate assets they were to receive. . . .

"The panel found no other factors in aggravation applicable to this case.

### "FACTORS IN MITIGATION

"Factor (c) [personal or emotional problems]: Although Respondent offered Exhibit 3, a psychological evaluation for purposes of mitigation, the evaluation does not demonstrate a causal connection between Respondent's conduct and emotional disability. Therefore the Panel concludes Factor (c) is not applicable.

"Factor (e) [full and free disclosure to disciplinary board or cooperative attitude toward proceedings]: Respondent did not deny that he transgressed the rules of professional ethics once he was caught.

"Factor (g) [character or reputation]: Respondent submitted evidence . . . that show significant support of Respondent from the legal and client community. These matters evidence Respondent's good personal character and his excellent reputation for practice in the criminal law area.

"Having considered the facts and the factors in mitigation and aggravation, the panel recommends that Respondent be indefinitely suspended from the practice of law. The panel was prepared to recommend disbarment, but has not done so because of the very significant support shown Respondent. The panel rejects Respondent's proposed plan of probation because of the severity of Respondent's offenses, particularly theft, and the aggravating factors noted above. This is not

an exceptional case with persuasive mitigating factors. See *In re Jantz*, 243 Kan. 770, 763 P.2d 626 (1988)."

### STANDARD OF REVIEW

It is well established that the panel's findings and recommendations are advisory only and are not binding on the court. It is the responsibility of this court to examine the evidence and determine for itself the discipline to be imposed. *In re Farmer*, 263 Kan. 531, 540, 950 P.2d 713 (1997).

It should also be noted at this point that respondent indicates in his brief that he filed exceptions "not to contest the matters to which he previously admitted, but to clarify the record for purposes of the appropriate discipline."

### ANALYSIS

Initially, we address one matter *sua sponte*. Factor (h) in aggravation includes the statement respondent did not seek appointment of a guardian ad litem for the minors herein. Respondent states his failure to do so was the result of his inexperience in probate matters. The parties and the panel proceed on the uncontested fact that no guardian ad litem was appointed. The record, however, reflects that a guardian ad litem (attorney Donald Noland) was appointed in 1990 when the estate was opened although apparently never "in the loop" for further proceedings. This changes little. As the office of the Disciplinary Administrator correctly argues, the panel was merely recognizing the vulnerable nature of the minors involved and the laws designed to protect their interests. Nevertheless, we strike this error from the panel's findings of facts.

Respondent further argues that the panel failed to consider his psychological evaluation as a mitigating factor. Our review of the record does indicate that the panel reviewed the evaluation but chose to give it little weight as a mitigating factor. We have reviewed the psychological evaluation. We find no merit on this point.

Finally, although respondent indicates that he is not taking exception to the panel's findings, he raises an additional concern with the factual findings. Respondent asserts that the panel erroneously found that the funds were discovered missing in September 1996

and were not repaid until many months later. Respondent contends that he repaid the funds on March 7, 1997, after the court ordered him to do so on February 10, 1997. Therefore, respondent argues that the panel's findings were erroneous on this point.

The record establishes that the Menghini law firm received a notice of intent to dismiss on August 8, 1996. Menghini then began his attempts to contact respondent and retrieve the estate file from him shortly thereafter. Respondent admitted in his deposition that he delayed responding to Menghini and the court because he did not have the funds to repay the money he had wrongfully taken. Although the panel's finding on this point may be technically incorrect, the corrected relevant factual findings are of no benefit to the respondent.

In conclusion, with the exception of the panel's finding concerning the guardian ad litem and its technical error concerning the date of discovery of the missing funds, we find there is clear and convincing evidence establishing the facts as found by the panel. These facts clearly establish that respondent violated MRPC 8.4(c), (d), and (g) and Supreme Court Rule 207.

The panel recommended that respondent be indefinitely suspended from the practice of law. In light of our review of the record, we agree with the panel's recommendation. Respondent's violations are a severe breach of the Model Rules of Professional Conduct. We therefore conclude that respondent should be indefinitely suspended from the practice of law.

IT IS THEREFORE ORDERED that Bryan A. Rickman be and he is hereby suspended indefinitely from the practice of law in the state of Kansas.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1998 Kan. Ct. R. Annot. 246).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.