No. 88,458

In the Matter of JACK M. N. SHELTON, *Respondent.*

(49 P.3d 10)

Opinion filed July 12, 2002.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Jack M. N. Shelton*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Jack M. N. Shelton, of Topeka, an attorney admitted to the practice of law in Kansas.

A formal complaint was filed against respondent in July 2000 encompassing complaints from seven clients. Later, four more clients were added to the list of complainants. A formal hearing was held before a panel of the Kansas Board for Discipline of Attorneys on December 19, 2001. Stanton Hazlett, Disciplinary Administrator, appeared for that office. Respondent appeared pro se. The parties entered into a stipulation which was adopted by the panel as its 41 findings of fact relative to the 11 cases before it. Those 41 stipulations of fact as recited by the panel are as follows:

"COUNT I — Case No. DA7959

"2.   The respondent was retained in October of 1999, by Sharon Colleen Heenan to represent her in a divorce. Ms. Heenan completed a Divorce Questionnaire provided by the respondent. She paid the respondent a $1,000.00 retainer with the understanding that the respondent would bill his time at $100.00 an hour.

"3.   On November 11, 1999, Ms. Heenan signed a verification of the Petition for Divorce. That petition was filed by the respondent on November 29, 1999.

"4.   In connection with the representation of Ms. Heenan the respondent prepared a Property Settlement Agreement. The document was completed in March of 2000, and provided to the complainant. After Ms. Heenan obtained a copy of the agreement she called the respondent on numerous occasions to ask about provisions contained in the agreement. The respondent failed to return the phone calls and provide the information requested. The respondent admits that [the] conduct described in paragraph 4 violated KRPC 1.3 and KRPC 1.4[(a)].

"5. In late March of 2000, Ms. Heenan fired the respondent and retained the services of Dale Somers. She first met with Mr. Somers on March 31, 2000. Mr. Somers immediately requested that the respondent provide him Ms. Heenan's file. The respondent provided a copy of his file to Mr. Somers. The file contained a copy of the Petition for Divorce and a first draft of the Property Settlement Agreement. A final Property Settlement Agreement was prepared by Mr. Somers on May 1, and a divorce was obtained for Ms. Heenan on May 11, 2000.

"6. Mr. Somers wrote letters to the respondent on March 31, 2000, April 18, 2000, May 11, 2000, and May 31, 2000. In each of these letters Mr. Somers requested that the respondent provide an accounting of his time spent on Ms. Heenan's case and a refund of any unearned retainer.

"7. On June 28, 2000, the respondent provided an accounting to Mr. Somers. The respondent refunded $405.00 to Ms. Heenan. The failure of the respondent to provide an accounting and refund of the retainer to the complainant from March 31, 2000, until June 28, 2000, constitutes a violation of KRPC 1.15(d)(2)[iv].

### "COUNT II — Case No. DA8008

"8. The complainant, Kimberly S. Campbell, retained the respondent on June 22, 1999, to obtain a divorce from James Campbell. A retainer of $600.00 and a filing fee were paid to the respondent by July 2, 1999.

"9. The respondent filed a Petition for Divorce on July 13, 1999. A Counter Petition was filed on July 21, 1999. A January court date was set for the divorce hearing. That court date was continued at the request of the complainant's ex-husband. The hearing was reset for April 18, 2000. On that date the parties appeared at the courthouse and negotiated a settlement which was read into the record before the judge hearing the case.

"10. On May 16, 2000, counsel for the husband, Darla Ottensmeir, submitted a proposed Decree of Divorce to the respondent. Despite correspondence from Ms. Ottensmeir and calls from her to the respondent, the respondent never contacted Ms. Ottensmeir about the proposed divorce decree. On July 25, 2000, Ms. Ottensmeir submitted the proposed Decree of Divorce to the court for approval without input from the respondent. The conduct described in paragraph 10 violated KRPC 1.3.

"11. On June 14, 2000, the complainant and her father met with the respondent and reviewed the proposed Divorce Decree. The complainant requested that certain changes be made to the decree. On July 20, 2000, in a letter from the respondent to the complainant, the respondent agreed to send the proposed changes to the husband's counsel by fax. The respondent failed to do so. On July 25, 2000, the complainant received an unsigned and undated letter from the respondent informing her that the requested changes would be added to the proposed Divorce Decree. The respondent never took action to relay the proposed changes to opposing counsel. Subsequent to the June 14, 2000, meeting with the respondent, the respondent failed to return phone calls from the com-

plainant. The divorce was granted on July 28, 2000. During the time period described in this paragraph the respondent failed to properly communicate with the complainant about the status of her case and failed to act diligently in violation of KRPC 1.3 and KRPC 1.4[a]. The [complainant] learned from her ex-husband that the divorce had been granted.

"12.   Subsequent to the granting of the divorce the complainant was able to set up a meeting with the respondent on September 12, 2000. The meeting was set up to discuss the preparation of an Income Withholding Order. The respondent agreed to prepare the forms, but failed to do so. Eventually, the order was prepared by opposing counsel and filed with the court. The respondent failed to provide a copy of the Divorce Decree to the complainant despite numerous requests by the complainant and her father to do so. The respondent's actions described in this paragraph violated KRPC 1.3.

#### "COUNT III — Case No. DA8006

"13.   The respondent was retained by the complainant, Brenda Eldridge, in November of 1999. Ms. Eldridge paid the respondent $350.00 designated by the respondent as a flat fee. She was renting a house under a lease/purchase agreement. The house sustained some water damage. She attempted to have the landlord fix a continuing mold and mildew problem. Instead, the landlord filed an action to evict her.

"14.   The respondent agreed to represent the complainant in the eviction action as well as file a counter suit regarding issues related to the mold and mildew problem. The respondent resolved the eviction matter.

"15.   Throughout the representation the respondent would not return phone calls or correspondence from the complainant. At some point in time he advised the complainant to obtain other counsel, but he has not formally withdrawn from representing her. The complainant has not been able to find new counsel to represent her interests. With respect to the counter suit, the respondent advised the complainant that she should obtain other counsel. Throughout the representation of the counter suit the respondent did not properly communicate with the complainant in violation of KRPC 1.4[(a)].

"16.   The respondent failed to cooperate in the investigation of the Eldridge complaint in violation of Supreme Court Rule 207[(b)].

#### "COUNT IV — Case No. 7991

"17.   On October 25, 1999, the complainant, John Ferguson, retained the respondent to file a Chapter 13 bankruptcy. The respondent was paid a $1,375.00 retainer with $175.00 of that being applied to the filing fee. Throughout the representation the respondent failed to communicate with the complainant and to adequately keep the client advised about the status of the case. The respondent's conduct violated KRPC 1.4[(a)].

"18.   On the same date of the confirmation hearing the Trustee's Objection To Exemptions was heard. The trustee's objection was sustained.

"19.   The respondent was terminated on April 28, 2000, by the complainant. At the time of the termination of the representation, confirmation of the plan had been denied. While attorney for the complainant, the respondent failed to secure confirmation of the Chapter 13 Plan. The respondent did not diligently obtain confirmation of complainant's Chapter 13 Plan in violation of KRPC 1.3.

"20.   Eventually, the complainant hired new counsel and had to pay an additional $1,200.00 to that attorney. The second attorney filed a Motion To Disgorge Attorney's Fees paid by the complainant to the respondent. On February 21, 2001, a hearing was held on the Motion To Disgorge Attorney's Fees and the court ordered that the respondent return $700.00 of the fees to the complainant. The court noted that the respondent had failed to secure confirmation for the complainant. To date, the respondent has not paid this money as ordered by the court. The failure of the respondent to promptly return the $700.00 to the complainant violated KRPC 1.16(d).

"21.   The complainant has received reimbursement of $700.00 from the Kansas Client Protection Fund Commission. The respondent has failed to reimburse the Commission for that payment.

"COUNT V — Case No. DA8109

"22.   The complainant, Lamont Jackson, retained the respondent to obtain a visitation schedule for the complainant. The respondent was retained on October 27, 2000, and was paid a $350.00 retainer on that date.

"23.   The complainant fired the respondent on November 28, 2000. The respondent admitted in his response to this complaint that he did not properly communicate with the complainant or diligently handle the complainant's case. The respondent's conduct violated KRPC 1.3 and 1.4[(a)].

"24.   The respondent agreed to repay . . . the $350.00 retainer to the complainant. The respondent has not done so. In the meantime, the complainant filed a claim with the Client Protection Fund and has been reimbursed $350.00. The respondent has not reimbursed the Client Protection Fund as of this date. Failure of the respondent to promptly refund the $350.00 retainer violated KRPC 1.15(d)(2)[(iv)].

"COUNT VI — Case No. DA8162

"25.   The respondent was retained by the complainant Walter Bradbury to represent the complainant in a post-divorce matter involving child support and transportation arrangements. The [respondent] was paid a $500.00 retainer on September 22, 2000. The complainant had first contacted the respondent in June of 2000.

"26.   The respondent remained the attorney for the complainant until January 31, 2001, when his services were terminated. During the entire representation the respondent did not communicate with his client or return phone calls. The respondent was not diligent in pursuing the child support and transportation problems. The respondent's conduct violated KRPC 1.3 and 1.4[(a)].

"27.  The respondent has offered to repay the complainant $375.00 as an unearned retainer. However, none of that money has been paid to the complainant by the respondent. The respondent 's conduct violated KRPC 1.15[(d)(2)(iv)] and 1.16[(d)].

## "COUNT VII — DA8164

"28.  The respondent was initially retained by the complainant, Jean T. Speranza, to file a bankruptcy for her. The complainant paid the respondent a $500.00 retainer on November 10, 2000. Later, the complainant decided not to go through with the bankruptcy and to file for divorce. The respondent agreed to represent the complainant in her divorce for the fee which had already been paid for the bankruptcy.

"29.  After consultation with the respondent, the complainant then decided to seek an annulment. The respondent agreed to represent her in the annulment and prepared the annulment paperwork. The paperwork was reviewed and signed at the respondent's office by the complainant on January 8, 2001. The respondent represented to the complainant that he would file the paperwork with the court no later than January 9, 2001. The annulment paperwork was never filed [by] the respondent as he told the complainant he would do. The respondent's conduct violated KRPC 1.3.

"30.  The complainant has requested a refund of the retainer paid to the respondent. No refund has been made. The complainant made a claim with the Client Protection Fund Commission and the commission has reimbursed the complainant. The respondent has not reimbursed the commission. The respondent's conduct violated KRPC 1.15[(d)(2)(iv)] and KRPC 1.16[(d)].

## "COUNT VIII — Case No. DA8171

"31.  The respondent was retained to represent the complainant, Mark Hetherington, in a post-divorce child support matter. The respondent was paid a $350.00 retainer.

"32.  The respondent admitted in his response to the complaint that he did not handle the complainant's case diligently and did not communicate with the complainant about the status of the complainant's case. The respondent's conduct violated KRPC 1.3 and 1.4[(a)].

"33.  The respondent's services were terminated and the respondent has not returned the unearned retainer to the complainant. The respondent's conduct violated KRPC 1.15[(d)(2)(iv)] and 1.16[(d)].

## "COUNT IX — Case No. DA8212

"34.  The respondent was retained by the complainants, Dean and Janet Reppert, in September of 1999, to file a Chapter 13 bankruptcy. The respondent was paid a $600.00 retainer and was to be paid an additional $600.00 through the Chapter 13 Plan.

"35.  The respondent filed a bankruptcy petition. Issues remained in the bankruptcy regarding unpaid taxes and repossession of the complainants' vehicles.

"36. From October of 2000, until March of 2001, the complainants tried to call the respondent at least once a week. During that time period the complainants were only able to talk to the respondent on two (2) occasions. The respondent did not return phone calls. In March of 2001, the complainants terminated the services of the respondent because of the lack of communication. The complainants had to hire new counsel. The respondent admitted in his response to this disciplinary complaint that he did not properly communicate with the complainants. The respondent's conduct violated KRPC 1.3 and 1.4[(a)].

"37. The respondent has failed to return any unearned retainer to the complainants. The respondent's conduct violated KRPC 1.15[(d)(2)(iv)] and 1.16[(d)].

### "COUNT X — Case No. DA8221

"38. The respondent was retained [in] August of 2000, to represent the complainant, Rick Woodward, in a child visitation and support matter. The respondent was paid a $750.00 retainer.

"39. In October of 2000, the respondent represented the complainant in a child support hearing.

"40. The respondent failed to take any action on the visitation problem and failed to communicate with the complainant about the visitation problem. The respondent's conduct violated KRPC 1.3 and 1.4[(a)].

"41. Eventually, the complainant fired the respondent. The respondent has agreed to return the entire fee paid by the complainant to the complainant, but has failed to do so. The respondent's conduct violated KRPC 1.15[(d)(2)(iv)] and 1.16[(d)]."

From these stipulations in the 11 cases called for hearing, the panel concluded respondent had violated KRPC 1.3 (diligence and promptness in representing a client) (2001 Kan. Ct. R. Annot. 323); KRPC 1.4(a) (status communications with client) (2001 Kan. Ct. R. Annot. 334); KRPC 1.15(d)(2)(iv) (returning funds, securities, or other properties to the client) (2001 Kan. Ct. R. Annot. 376); KRPC 1.16(d) (protecting clients' interests upon termination of representation) (2001 Kan. Ct. R. Annot. 387) and Supreme Court Rule 207(b) (assisting in investigations concerning complaints) (2001 Kan. Ct. R. Annot. 246), as admitted in said stipulations.

There were, however, three additional stipulations of particular significance by virtue of subsequent developments. These additional stipulations are as follows:

"42. The respondent acknowledges that twenty-two (22) additional complaints have been docketed by the Disciplinary Administrator's Office and are presently under investigation. The respondent admits that in five (5) of those cases he did not properly communicate with his clients and failed to return unearned

retainers. The respondent agrees that he will assist the Disciplinary Administrator's Office in the investigation of the remaining complaints, take whatever action is necessary to protect the interests of those clients who have filed complaints that are still under investigation by the Disciplinary Administrator's Office and will return all unearned retainers in a timely fashion.

"43.    The respondent agrees to reimburse the Client Protection Fund Commission for any payments made by the Commission as a result of claims made against the respondent and to provide a written response to the Commission regarding each claim.

"44.    The Disciplinary Administrator will recommend indefinite suspension to the panel and the Kansas Supreme Court as the appropriate discipline in this case. The Disciplinary Administrator will recommend that the indefinite suspension be effective as of December 6, 2001, the date the respondent's temporary suspension commenced. The respondent understands that any recommendation made is not binding on either the panel or the Kansas Supreme Court. The respondent shall have the opportunity to make his own recommendation to the panel as to the appropriate discipline. The continuing recommendation of indefinite suspension by the Disciplinary Administrator is contingent upon the respondent complying with the responsibilities set out in paragraph 42."

## RECOMMENDATION

### The panel then made the following recommendation:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide adequate communication and diligent representation. Additionally, the Respondent violated his duty to his clients to safeguard their property.

"*Mental State.* The Respondent knowingly violated his duties to his clients.

"*Injury.* The Respondent's clients suffered actual injury as the result of the Respondent's misconduct.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Selfish Motive. At the hearing on this matter, the Respondent testified that he continued to take cases because he needed money to pay his bills.

"Pattern of Misconduct. Included in this case are eleven complaints. Each complainant encountered similar problems with the Respondent. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 1.4(a), KRPC 1.15(d)(2)(iv), KRPC 1.16(d), and Kan. Sup. Ct. R. 207(b). As such, the Respondent committed multiple offenses.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent has failed to express a clear recognition of regret or remorse for engaging in the misconduct.

"Vulnerability of Victim. The Respondent's clients are the victims of this case. Many of the clients hired the Respondent to immediately file post-divorce motions or actions in bankruptcy and were vulnerable to the Respondent's misconduct.

"Indifference to Making Restitution. While the Respondent stated that he would like to refund the unearned fees to the clients and reimburse the Client Protection Fund, the Respondent has made no efforts to this end.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Inexperience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1998. At the time the misconduct began, the Respondent was inexperienced in the practice of law because he had been practicing law for approximately one year.

"The Respondent presented extensive testimony at the hearing on this matter regarding his previous good character. The evidence of the Respondent's previous good character is not persuasive as a factor in mitigation, because the Respondent's character witnesses were unfamiliar with the allegations in the eleven complaints and because their testimony mainly related to the Respondent's general character and not specifically to his ability or character in the practice of law.

"Finally, the Respondent presented the testimony of Dr. Cornelia Daluza regarding his mental disability. In certain situations, evidence of a mental disability can be considered as evidence in mitigation of the misconduct. In order for a mental disability to be a factor in mitigation, the Respondent must establish that (1) the Respondent was affected by a mental disability, (2) the mental disability caused the misconduct, (3) the Respondent's recovery from the mental disability was demonstrated by a meaningful and sustained period of successful rehabilitation, (4) the recovery arrested the misconduct, and (5) recurrence of that misconduct is unlikely. See Standard 9.32(h).

"In this case, Dr. Daluza established that the Respondent suffers from two mental disabilities: attention deficit disorder and depression. Additionally, Dr. Daluza established that the Respondent's mental disability caused or, at least, contributed to the Respondent's misconduct. However, the Respondent failed to present evidence of the remaining criteria. The Respondent failed to establish that he has recovered from the mental disability, that he has successfully completed a meaningful and sustained period of successful rehabilitation, that the

misconduct has arrested, and that recurrence of the misconduct is unlikely. As such, the Hearing Panel concludes that the Respondent's mental disability is not a mitigating factor.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standards 4.41 and 4.42. Standard 4.41 provides, in pertinent part, as follows:

'Disbarment is generally appropriate when:

. . . .

'(b)  a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

'(c)  a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

'Standard 4.42 provides:

'Suspension is generally appropriate when:

'(a)  a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

'(b)  a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

"At the conclusion of the hearing held in this matter, the Disciplinary Administrator recommended that the Respondent be indefinitely suspended from the practice of law. The Respondent requested that he be suspended for six months. The Respondent acknowledged that he should repay his clients and the Client Protection Fund before he is allowed to resume the practice of law in this state.

"After reviewing the Agreed Stipulation entered into by the parties, and considering the arguments of the parties, the Hearing Panel strongly considered recommending to the Kansas Supreme Court that the Respondent be disbarred. However, because the Respondent has begun the treatment process and because the Disciplinary Administrator recommended that the Respondent be indefinitely suspended, the Hearing Panel unanimously recommends that Respondent be indefinitely suspended from the practice of law in the state of Kansas. The Hearing Panel recommends that before the Respondent is allowed to practice law in the state of Kansas again, the Respondent prove that he has repaid, in full, all of his clients, as well as all the funds paid on his behalf to the Respondent's clients by the Client Protection Fund. Additionally, the Hearing Panel recommends that the Respondent be required to establish, by the testimony of qualified medical or other professional witnesses, that he has received the appropriate professional care and treatment, that he has actively and meaningfully participated in efforts to identify, treat, and control his conditions, that he has recovered from the mental disability as demonstrated by a meaningful and sustained period of successful rehabilitation, that his recovery arrested the misconduct, and that recurrence of that misconduct is unlikely."

## SUBSEQUENT DEVELOPMENTS

On April 25, 2002, the Disciplinary Administrator filed an unusual pleading herein. It is as follows:

"NOTICE OF DISCIPLINARY ADMINISTRATOR'S CHANGE IN RECOMMENDATION FOR DISCIPLINE

"COMES NOW the Disciplinary Administrator's Office, through Stanton A. Hazlett, and provides notification to the respondent, Jack M. N. Shelton, and the Kansas Supreme Court of its change of recommendation for discipline in the above entitled cases. In support of said change of recommendation the Disciplinary Administrator's Office states the following:

"1.    The respondent was the subject of a disciplinary hearing held on December 19, 2001, as a result of 11 separate complaints filed by his clients. Misconduct was found on the part of the respondent in each instance. The Disciplinary Administrator recommended that the respondent be indefinitely suspended. The panel recommended that the respondent be indefinitely suspended from the practice of law. The case was docketed before the Kansas Supreme Court on February 14, 2002 and is set for oral argument before the Kansas Supreme Court on May 28, 2002. On December 6, 2001, the respondent was temporarily suspended by the Kansas Supreme Court pursuant to Supreme Court Rule 203(b) (2000 Kan. Ct. R. Annot. 224) during the pendency of the disciplinary proceedings against him. Subsequent to that order, representatives of the Disciplinary Administrator's Office took possession of the respondent's active case files. Various members of the Bar in Shawnee County volunteered to take over the respondent's cases and protect the interests of the respondent's former clients.

"2.    At the respondent's disciplinary hearing he entered into an Agreed Stipulation. The respondent acknowledged violations of the Kansas Rules of Professional Conduct in the 11 complaints which were the subject of the December 19th hearing. He also acknowledged that 22 additional complaints had been docketed by the Disciplinary Administrator's Office and were under investigation at that time. Since that time an additional 15 complaints have been docketed for investigation by the Disciplinary Administrator's Office. All 48 of the complaints filed with the Disciplinary Administrator's Office involve allegations of lack of communication, lack of diligence and unearned retainers.

"3.    In the Agreed Stipulation the respondent agreed to reimburse the Client Protection Fund Commission for any payments made by the Commission as a result of claims made against the respondent. He also agreed to provide a written response to the Commission regarding each claim. A total of 32 claims have been made against the respondent with the Client Protection Fund Commission. Of those only 1 claim has been denied. One claim is presently pending. The rest of the claims have been reimbursed by the Commission in the total amount of $23,760.00. The respondent, in spite of his agreement to do so in the Agreed Stipulation, has failed to provide any written response to the Commission with respect to the claims made against him. 23 Client Protection claims have been lodged against the respondent since the Agreed Stipulation was signed by the respondent.

"4. The change in the Disciplinary Administrator's recommendation has occurred as a result of the respondent's failure to abide by his agreement to provide written responses to claims made with the Client Protection Fund in addition to the fact that 15 additional complaints have been docketed by the Disciplinary Administrator's Office against the respondent since the hearing of December 19, 2001. The respondent's misconduct has caused a great deal of inconvenience as well as loss of money to his clients, has caused inconvenience for the courts of this state as well as harm to the profession.

"WHEREFORE, the Disciplinary Administrator's Office provides notification that it will make a recommendation of disbarment as opposed to the recommendation of indefinite suspension made to the panel hearing this case on December 19, 2001."

At the hearing before us, respondent objected vigorously to the Disciplinary Administrator's change in recommendation from indefinite suspension to disbarment. Respondent argues that the Disciplinary Administrator is locked into the stipulated recommendation regardless of later developments such as his failure to make the agreed upon reimbursement to the Client Protection Fund and to provide a written response as to each claim before the Client Protection Fund Commission. At the hearing before us, we were advised that the situation remains the same—the respondent has not made restitution to the Client Protection Fund and he has not provided written responses to the Commission. We note that the stipulation entered into by the parties conditions the Disciplinary Administrator's recommendation of indefinite suspension on respondent's compliance with the requirements contained in paragraph 42, whereas the recommendation is being altered for failure to comply with those items set forth in paragraph 43. Respondent does not specifically raise this issue, but it is not significant. The court routinely seeks an update on relative facts between the date of the hearing before the panel and the date of the hearing before the court. The failure to comply with the agreed-upon obligations set forth in stipulation 43 is, to us, an important consideration. In any event, the recommendation of a panel as to sanctions to be imposed is advisory only and does not prevent the court from imposing discipline greater or less than that recommended by the panel or disciplinary administrator. Supreme Court Rule

212(f) (2001 Kan. Ct. R. Annot. 263); *In re Farmer*, 263 Kan. 531, 540-41, 950 P.2d 713 (1997).

We also note that 15 additional complaints have been docketed for investigation since the panel hearing. Thus a total of 48 complaints have been filed against respondent, which is believed to be a record, albeit an unenviable one, for an individual who has only been practicing law in Kansas since 1998.

## DISCUSSION

The panel's findings of fact and conclusions of law are taken directly from the stipulations of the parties. No exceptions have been filed. Indeed, taken as they are from the parties' stipulations, exceptions thereto would hardly be viable. We conclude the panel's findings of fact and conclusions of law are supported by clear and convincing evidence, and we adopt the same. The pattern of misconduct repeats itself. Respondent takes a retainer, does not perform the services he has promised, will not communicate with or return calls to the client, and keeps unearned retainers. There is no indication that respondent has undergone any changes that would alter the pattern if he were to resume the practice of law. A minority of the court would disbar the respondent, but a majority finds that indefinite suspension is the appropriate discipline.

IT IS THEREFORE ORDERED that Jack M. N. Shelton be indefinitely suspended from the practice of law in the state of Kansas effective the date of this opinion in accordance with Supreme Court Rule 203(a)(2) (2001 Kan. Ct. R. Annot. 224).

IT IS FURTHER ORDERED that respondent reimburse the Client Protection Fund of the State of Kansas for all amounts paid on his behalf and that such payment is a condition to any reinstatement.

IT IS FURTHER ORDERED that in the event respondent should seek reinstatement, he shall be subject to all reinstatement requirements, including a hearing as required by Supreme Court Rule 219 (2001 Kan. Ct. R. Annot. 285).

IT IS FURTHER ORDERED that respondent comply with Supreme Court Rule 218 (2001 Kan. Ct. R. Annot. 276), that the

costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.